All rise. Oh yes, oh yes, oh yes. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. Please be seated. Ladies and gentlemen, good morning everybody. Our first case on the docket this morning is People v. Fairchild, 5-24-0046. Appellate, if you are ready to proceed, please identify yourself for the record and you may do so. Good morning, Honors. Good morning, Counsel. Hannah Peterse from the Office of the State Appellate Defender on behalf of Joshua Fairchild, the appellant in this case. May it please the Court. Mr. Fairchild raises five issues in this case. However, I plan to spend most of my time on Issue 1, the speedy trial issue, and if time permits, move into Issue 3 concerning the business records certificates. Of course, I am happy to answer any questions that your Honors have regarding any of the issues as we go along. The State of Illinois has made a clear policy judgment that an individual's speedy trial rights are of paramount importance to the extent that if a defendant is not brought to trial within the 120-day speedy trial term, the charges against him must be dismissed. This Court has an obligation to uphold that policy, even when doing so requires the reversal of a very serious conviction such as first-degree murder. In this case, the State, the trial court, and defense counsel all failed in their obligations to bring Mr. Fairchild to a speedy trial, and therefore his convictions must be reversed. Now, in this case, the primary fault does lie with defense counsel, and that is why we have raised this issue as one of ineffective assistance of counsel. On May 3, 2023, when 29 days of the speedy trial term had already elapsed, defense counsel informed the Court that his client demanded a speedy trial. However, in the same breath, once the State proposed a mid-August trial date, defense counsel failed to object to an August 14 trial date, which was 103 days later, and therefore outside the statutory period. Had counsel objected to this 103-day delay at the proper moment in time, there is a reasonable probability that the State would not have been able to bring Mr. Fairchild to trial within the 120-day term and a motion to dismiss him. A motion to dismiss would have necessarily been granted on that basis. As an initial point, the State misunderstands Mr. Fairchild's argument on deficient performance. It is both defense counsel's failure to object at the proper moment and defense counsel's failure to move to dismiss once the 120-day term had elapsed that constitutes deficient performance in this case. We filed a motion to cite the Supreme Court's recent decision in People v. Yankaway, and that case supports our position that this constitutes deficient performance. In that case, the Supreme Court held that when counsel is aware of his client's desire for a speedy trial but fails to raise a proper objection to a delay, that constitutes deficient performance, and that is exactly what occurred here. So given that counsel did perform deficiently, the only remaining question is that of prejudice. And prejudice really is the sticking point in a lot of these ineffective assistance cases, including the Supreme Court's recent decision in Yankaway and this Court's recent decision in People v. Team. The People v. Yankaway case makes clear that prejudice cannot be established by mere speculation. And in that case, there was a series of logistical difficulties that made it difficult for trial to be held within the time requested by defense counsel, so the Supreme Court held that even if counsel had objected at the relevant moment in time in that case, the motion to dismiss still would have been denied in that case. This case is actually the opposite of Yankaway, because we know from the facts and the record that had counsel made the proper objection, everything would have actually proceeded exactly as it did. And there's a few reasons for that that I'd like to get into. First, the State told us that it could not go to trial any earlier than mid-August. So that in and of itself should be enough. The State requested a mid- to late-August trial date. When the Court offered August 7th, the State said it could not make that date work and requested August 14th. Both August 7th and August 14th were actually outside the 120-day period. So we know from the record that at the very least there is a reasonable probability, which is the standard under Strickland, that the State would not have been able to make an earlier trial date work. But if there would have been an objection, the State could have then made the motion requesting additional time, saying they were impeded from going forward, make that motion for the trial court that would give them the extra time to get what they needed to be ready for trial, correct? Your Honor, yes. However, there's a couple of reasons that that would not have happened, based on the facts that we have in this record. The first, most important thing to really keep in mind is that the parties actually proceeded in this case as if defense counsel had made a proper objection. So even though defense counsel objected before the trial date was set, instead of a few minutes later after the trial date was set, everyone proceeded as if this was an effective demand and that the speedy trial clock was running. This really came down to a miscalculation of the dates. Both defense counsel and the State miscalculated the term. And it's on the State to get that term correct, because it is the State's obligation in the end to bring the defendant to a speedy trial. So this is not a case where, had defense counsel made the objection properly, the court would have, you know, granted the continuance on the basis that defense counsel agreed to the delay. This is a situation where it didn't matter if counsel made the objection before the trial date was set or after. Everyone assumed that the speedy clock was, in fact, running. And so all the facts that we have in this record indicate that the State would not have actually done anything differently here. So, you know, again, this is not a situation where we have to speculate or assume prejudice. If anything, speculation would go the other direction. We would have to speculate that the State would have somehow recognized its mistake and then changed its schedule accordingly. If this court has no further questions on Issue 1, I'd like to move to Issue 3. Thank you. So in this case, the State opted to use Illinois Rule of Evidence 90211 to admit a significant amount of evidence that was allegedly concerning Mr. Fairchild's state of mind at the time of the incident. This included Instagram posts, selfies, and the December 2019 text message, all extracted from Mr. Fairchild's phone and taken from his Instagram account. However, the State did fail to comply with the requirements of Rule 90211 in admitting that evidence. Now, both the certificates were deficient, and we fully set forth the deficiencies in our briefs. Unless this court has questions about that, I will stand on the briefs on that point. This issue, once again, rests on the question of prejudice. There is a slightly different prejudice standard regarding both certificates. The Instagram certificate is not a preserved error, so we're looking at that under the closely balanced analysis or strickling prejudice for purposes of ineffective assistance. The Cellebrite certificate is a preserved error, so we're looking at prejudice under the harmless error standard. But whatever lens you look at this under, this evidence was significantly prejudicial. This was a case where the State rested entirely on Mr. Fairchild's recorded confession. And while the State was able to establish that Mr. Fairchild committed the acts resulting in Ms. Branch's death through that confession, his state of mind was well in dispute. And the evidence from Mr. Fairchild's confession was equivocal at best on his state of mind. I think anyone that has watched that interrogation video understands that Mr. Fairchild was a very unreliable narrator of the events. So while there was evidence that the State used to support its intentional or knowing murder theory, there was also evidence tending to support self-defense theory, an unreasonable self-defense theory, or provocation. And I see that I am running low on time. I will just say that the State would not have used this evidence had they not believed it was helpful to show Mr. Fairchild's state of mind at the time of the incident. It should never have come in, and it was significantly prejudicial. If this Court has no further questions, then for the reasons we stated in the briefs and here today, we ask that this Court reverse Mr. Fairchild's conviction. We ask that this Court reverse Mr. Fairchild's conviction outright, remand for a new trial, or remand for resentencing. And I will address any other questions this Court has in rebuttal. Thank you. We will be given time for rebuttal. Thank you. Appellee, please step forward and identify yourself for the record, and you may proceed. Please be seated. Please be seated. Please be seated. This Court should reverse the defendant's conviction outright because this Court reversed the defendant's conviction outright because he was deprived of the effective assistance of counsel where trial counsel failed to move or dismissal on the basis of a statutory expedient trial violation. No mention of objection, although it is mentioned within the facts and it is acknowledged, but the crux of this issue is failing to file a motion to dismiss based on a violation of the statute. Now, in regards to prejudice, defendant's prejudice argument fails for two reasons. Number one, pursuant to a cordel, when opposing counsel, when a defense attorney requests for a speedy trial before any trial date is proposed and you don't object when the trial date is proposed, that is an acquiescence. And so if defense counsel had filed a motion to dismiss after that hearing, the trial court would have reviewed the motion and reviewed the transcripts. And the court would have noted that you did not object to the proposed trial date and would have denied the motion. So we automatically know that this motion is futile. And in defendant's reply brief, in a footnote, no less, they argue that the state forfeited its prejudice argument. The state disagrees. It articulated within the brief that a motion would have been futile. And that goes to the prejudice analysis. And the state cites cordel, which is synonymous to the facts of this case. In cordel, the defendant raised the same argument, that he requested a speedy trial demand. And the court noted this, the Supreme Court noted this. But they rejected the argument of ineffective assistance of counsel because the defendant didn't object when it came time to propose the trial dates. And the Supreme Court outright rejected that argument. And the state stands by its citation to cordel. Furthermore, post-briefing, defendant filed a motion to cite people via Yankaway, I mean post-briefing, which this court granted. And Yankaway does not support the defendant's position. In Yankaway, the Illinois Supreme Court stated that prejudice cannot be based on speculation. And this is what they concluded. The defendant's arguments rest on the assumption that the state would not have changed its pretrial strategy. And the circuit court would not have changed its approach. And the Supreme Court stated you cannot establish prejudice. It's all based on speculation. And that is the defendant's arguments on appeal, stating that the state could not have brought this case sooner than August 14th. And let's say for assuming that the 103-day delay was a delay. That pushed the speedy trial date to 132 days. So the defendant is complaining 12 days. So their argument is speculative, saying that the state could not have brought him sooner than 12 days, less than two weeks, if they had filed a motion. No, it is quite more probable that if defense counsel had filed this motion, the state would have changed its strategy. And they would have brought him to trial 12 days sooner. Moreover, it was not unreasonable for defense counsel not to file that motion because defense counsel was not ready for trial by May. They were ready by August. And how do we know that? The record supports that interpretation. Because after May 3rd and before the August 14th trial date, defense counsel filed numerous pretrial evidentiary motions that clearly were not ready or had not been filed and had not been ruled on at the time the court scheduled the trial date. Examples of the motions cited by defense counsel were defendant's motion to bar an expert witness, defendant's motion to bar prior statements and to bar telephone calls based on an alleged discovery violation, defendant's motion to bar a witness to a discovery violation. And on July 27th, a little over two weeks before the trial date started, defense counsel filed a motion to allow testimony for video conferencing for their expert witness, Dr. Boyd, because he was on vacation. So if Dr. Boyd could not have come and testified via Zoom or in person, defense counsel alternatively requested a continuance for jury trial. That's on July 27th. So it was a reasonable trial strategy not to object to the proposed trial date because, as stated, both the state and the defense had numerous evidentiary pretrial motions yet to litigate and file. It was completely reasonable. Does this court have any questions on, like, the prejudice analysis or Cordell or Yankovic? The state moves on to issue three. Defendant takes issue with the admission of Instagram posts pursuant to rule 902.11. Defendant argues that the certificate of authenticity was defective, and the state concedes that it was. However, this issue was not raised. It was raised via first prompt plain error, and it was raised via ineffective assistance of counsel. And the Instagram post stated, at Kylie Jenner, if this court doesn't know, that's a reality television star who is related to the Kardashians, if this court doesn't know. And within the caption, he says, I apologize, at Kylie Jenner, but you were too cute. I had to kill my girlfriend. What defendant doesn't acknowledge is that defense counsel introduced these statements himself as well as an exhibit via an extraction report. Defendant exhibits exhibit five. And within that exhibit five has the same caption. So defendant is alleging error of admission of evidence that he himself admitted. Furthermore, first prompt plain error does not apply here because the evidence in this case was not closely balanced. The state introduced a confession by the defendant in which the defendant told the police that, yes, I stabbed her three times, albeit for self-defense. And that's what the defendant argued in closing second-degree murder based on an unreasonable belief on self-defense. So even without the Instagram post, you can't satisfy your burden, which is the defendant, of is this case closely balanced. It is not. We have a statement by the defendant saying that I killed her. When the officers conducted a wellness check months after the murder, because he was also convicted of concealment of a homicidal death, he came out and told police that, no, the victim is not in the house. Later on, the police got a warrant, went inside, and there was a body. So we have a confession. We have the defendant's guilty state of mind, meaning his actions post-crime, lying to the police that she's not in there when he had been concealing her body for months. So this is not a closely balanced case. I see that my time is almost running up. Does this court have any questions on Issue 1 or Issue 3 or the other three issues raised by the defendant in the brief? No question. Thank you. The people of the state of Illinois respectfully request that this court affirm the defendant's conviction for first-degree murder and concealment of a homicidal death. Thank you. Thank you, Your Honors. Very briefly, I'd like to make one quick point about the brief in this case as well as then we'll move on to the issue of the pretrial motions. My colleague suggests that our brief does not raise allegations of ineffective assistance based on both the failure to object and the failure to move to dismiss. That is entirely incorrect. The very first paragraph of Issue 1 states that counsel did not object to the August 14th trial date and counsel did not move to dismiss once the speedy term had elapsed. We repeat that allegation throughout Issue 1. And really that just goes to the state continues to misconstrue our argument, responding only to the failure to file a motion to dismiss and discounting the failure to object and also relying on Cordell, which is not an ineffective assistance case. On the issue of the pretrial motions, I have a couple of responses to that. First, all of the pretrial motions that were filed by both the defense and the state were an anticipated part of pretrial practice. The court set a schedule for pretrial motions, set certain pretrial dates to address those motions, and the parties anticipated filing motions and addressing those motions in due course before continuing to still proceed with trial at the scheduled time. Counting those motions as a delay would require defendants to choose between a fair trial and a speedy trial, as they would essentially be unable to participate in pretrial practice. And I would encourage this Court not to hold that that is the case. Even if some of the defense's motions can be construed as delays, the state's motions that were filed on July 26th and 27th, for the most part those motions were resolved on August 2nd. So that at most is a six or seven day delay, which means that the trial was still held outside the 120 day term. There were other motions that were not addressed until trial. But again, it would be nonsensical to hold that those motions constitute a delay, because the trial court, after those motions were filed, said I'm going to deal with these motions during the course of trial. So, you know, holding the motions that are going to be addressed during trial constitutes a delay of the trial. It simply defies logic. So, you know, these pretrial motions did not affect the way that the proceedings would have played out. Again, the reason the trial date was scheduled too late was because the state and defense counsel miscalculated the days and believed that they were scheduling a trial within the speedy trial term, when in fact they were not. Therefore, there is a reasonable probability under Strickland that an objection would have been effective and that a motion to dismiss would have necessarily been granted once the 120 day term elapsed. That is all that is required for prejudice. And therefore, we contend that Mr. Fairchild's conviction should be reversed for the other relief granted. I'm happy to answer any other questions this court may have. At least one of the defendant's motions filed after the trial was set, that was filed in July, was to bar some of his statements. You agree that was told? Yes, Your Honor. And that's the one you're talking about was only six days? No, Your Honor. So the motion to bar statements was filed on August 1st. That is one of the motions that the trial court said it would resolve during trial. So again, I don't think it's really fair to construe that as a delay where the trial court said, you know, I'm just going to take that up as it comes up during the course of the trial. All right. Thank you. Is it your position that the evidence here was closely balanced? Yes, Your Honor. And, in fact, really the closely balanced issue goes to Mr. Fairchild's state of mind. As I suggested earlier, the evidence on his state of mind was very unreliable, weak. It rested entirely on his confession. There was other evidence, objective evidence, supporting his self-defense theory. There were photos introduced of the cut across his hand that he alleged was a defensive wound that was consistent with his statement of self-defense during the interrogation. There was testimony from Dr. Boyd explaining in great detail how his schizoaffective disorder could have affected his ability to rationalize and understand what was happening during the incident. So really on the issue of his state of mind, which is an element of the offense the state was required to prove, the evidence was certainly closely balanced. The Instagram posts, while the state wants to suggest these somehow helped his case, the state's the one that introduced those posts because they directly refute a self-defense theory. They, you know, taken at face value, they suggest an intent for the murder. Same thing with the selfies and the text message that were introduced. So, and to the extent that the state was arguing that this was invited, defense counsel used this evidence after the state was already allowed to use it. And I see I'm out of time, so. Thank you. Thank you. Actually, if I could. Yes, please. To be fair, with two days and 20 some odd cases to get through, sometimes they kind of bleed together when I'm trying to read through them. So I'm trying to, was there actually a self-defense instruction given at the trial? Yes, Your Honor. Okay, and so the jury just basically found him guilty of the first degree and the concealment. Correct, Your Honor. The jury was instructed on both reasonable and unreasonable self-defense.  Thank you. Anything further? No, thank you. All right. Thank you, counsel. Thank you. We will take this matter under advisement and issue a ruling in due course. Thank you.  I don't mean to step on the presiding justice, but I know some of you may be down here for the first time. If I, I don't know if you knew this, you have or will stand where Abraham Lincoln stood. If you get a chance while you're here, there's a lot of history around. You know, please take the time to take a look around and kind of soak up some of that ambience that we're lucky to get to be in often. Thank you, Your Honor.  That's still your thunder. Thank you, Judge.